# EXHIBIT A

# EXHIBIT A



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*Patrick Castañeda & Jason C. Pang*
Phone: (213) 894-0637 / 2652
E-mail: Patrick.Castaneda@usdoj.gov
Jason.Pang@usdoj.gov

*1400 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

December 2, 2021

**VIA EMAIL**

Alex R. Kessel
Law Offices of Alex R. Kessel
15910 Ventura Blvd., Suite 1030
Encino, CA 91436
Email: kessellawfirm@gmail.com

Mark Andrew Hover
Law Offices of Mark A. Hover
4212 East Los Angeles, Avenue No. 3195
Simi Valley, CA 93063
Email: mhover@yahoo.com

      Re:    United States v. Mirela Todorova, CR 21-00244-VAP
                Inextricably Intertwined Evidence & Rule 404(b) Notice

Dear Counsel:

      This letter contains the government's initial notice of its intent to introduce evidence of other crimes, wrongs, or acts committed by your client not explicitly listed in the Indictment that are (1) so inextricably intertwined with the charges in the Indictment so as to fall outside the ambit of Federal Rule of Evidence 404(b) ("Rule 404(b)") or (2) are such "other crimes, wrongs or acts" for purposes of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The government reserves the right to amend and/or supplement this notice as it prepares for trial.

**I.**      **INEXTRICABLY INTERTWINED EVIDENCE**

      Evidence of the circumstances surrounding the underlying search warrants and their execution is so inextricably intertwined with the charges of the Indictment so as to fall outside the ambit of Federal Rule of Evidence 404(b). Such evidence constitutes part of the transaction that serves as the basis for the criminal charge. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Moreover, admission of this evidence is necessary "to permit the prosecut[ion] to offer a coherent and comprehensible story regarding the commission of the

RE: U.S. v. Mirela Todorova
December 2, 2021
Page 2

crime . . . ." *Id.* Here, the inextricably intertwined evidence includes, but is not limited to, the following:

A. Your client's significant and suspicious financial transactions since about January 2020

B. Your client's statements and actions during her March 4, 2021 interview with Customs & Border Patrol ("CBP")

C. Your client's interactions with Couriers before and during March 2021

D. Your client engaging in numerous suspected drug distributions as seen during surveillance in March 2021

E. Your client visiting a suspected stash house linked to a drug cartel as seen during surveillance in March 2021

F. Your client responding to an undercover agent's communication(s) sent to her phone number ending in -9519 as seen during surveillance in March 2021

G. Your client possessing charged and uncharged drugs, drug-related materials and paraphernalia, digital devices containing drug related content, and documents containing personal identifying documents in her apartment on or about March 24, 2021

## II.   404(b) EVIDENCE

Although the above-described evidence is inextricably intertwined with the charges in the Indictment, the government hereby discloses under Rule 404(b) a summary of evidence identified in the complaint and throughout the discovery that the government intends to use for, among other things, proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). Importantly, Rule 404(b) is a rule of "'inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition.'" United States v. Bradshaw, 690 F.2d 704, 708 (9th Cir. 1982) (citation omitted); see also United States v. Berckmann, 971 F.3d 999, 1002 (9th Cir. 2020 (internal quotations, brackets, and citation omitted); United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008).

### A.   Significant and Suspicious Financial Transactions

Since about January 2020, your client received about $733,357.19 combined via five peer-to-peer financial services, including Paypal, Venmo, Zelle, Cash App/Square, and Apple Pay despite purporting to be unemployed during part of or all that time frame.

### B.   Interview with CBP

On or about March 4, 2021, your client was interviewed by CBP officers on her return trip to Los Angeles International Airport from Mexico. She provided several statements during

RE: U.S. v. Mirela Todorova
December 2, 2021
Page 3

that interview, including but not limited to the following: she was unemployed, she lived with her parents in Newbury Park, California, she provided a phone number ending in -4281 instead of her personal United States phone number ending in -9519, and she stated she did not have a United States phone number.

### C. Interactions with Couriers

#### 1. Courier A

Between March 7 and 13, 2021, your client exchanged communications with an individual ("Courier A") who later joined your client's drug trafficking organization ("DTO") as a drug delivery driver for a short time. Messages between your client and Courier A show, among other things, your client agreeing to hire Courier A as a drug delivery driver, telling Courier A about the general work schedules and pay, and telling Courier A that your client has a lawyer on retainer and would pay Courier A's legal fees if necessary. The messages show that your client and Courier A met near your client's apartment on March 10, 2021. Indeed, at approximately 9:29 p.m. on that date, an investigator saw your client in her car with a passenger, later identified as Courier A, outside your client's apartment complex on Carlos Ave. Your client and the passenger exited your client's car and entered Courier A's car.

Furthermore, Courier A provided two interviews collectively confirming that Courier A worked three shifts for your client between March 10-13, 2021, during which Courier A delivered drugs provided by your client to various customers throughout Los Angeles County, and possibly elsewhere, at your client's direction and with the aid of a cellphone provided by your client. Prior to working for your client, Courier A had ordered drugs from your client, learned that your client needed delivery drivers, and contacted your client about the same. On March 10, 2021, your client met Courier A outside your client's apartment, trained Courier A for about an hour in Courier A's car, and provided Courier A with drugs and a cellphone connected to a shared iCloud account with saved customer contacts. After the training, your client left Courier A in Courier A's car to conduct drug deliveries at your client's direction while your client conducted her own drug deliveries in a separate vehicle. Though in separate vehicles, your client messaged Courier A's personal cellphone directing Courier to various customers presumably appearing on the other cellphone your client provided to Courier A. Your client told Courier A to return to your client's apartment for more drugs when necessary. Courier's next two shifts occurred in similar fashion.

#### 2. Courier B

On or about March 15, 2021, your client exchanged messages with another one of her drug delivery drivers ("Courier B") in which your client, among other things, directed Courier B to specific drug customers, instructed Courier B to return to your client's place to "reup" the drug supply, instructed Courier B how to screen new clients and/or referrals, instructed Courier B to send and structure payments through Zelle to your client's account in her phone number and name, paid Courier B an advance and told Courier B to take out cash from the end of Courier's B

RE: U.S. v. Mirela Todorova
December 2, 2021
Page 4

shift in an amount equal to $37.50 an hour, and informed Courier B that failure to appear for the shift would cost your client thousands of dollars.

### D.  Numerous Suspected Drug Distributions Observed during Surveillance

On March 9, 2021, between 3:00 p.m. and 10:25 p.m., investigators saw your client entering and exiting her apartment complex in her car, stopping at a Bank of America, and driving her car to make at least 8 stops of short duration to meet with at least 6 separate, unknown persons at various locations in Los Angeles County consistent with drug distributions. On March 23, 2021, at about 9:52 p.m., investigators saw your client driver her car out of her apartment complex drive to and meet with an unknown person at about 10:02 p.m. for a short duration in which the unknown person reached into your client's car toward your client then walked away consistent with a drug distribution.

### E.  Visitation to Building Linked to Drug Cartel Observed during Surveillance

On March 15, 2021, starting at about 3:43 p.m., investigators saw your client exit her apartment complex in her car, drive to and enter a Bank of America, obtain three stacks of cash in a white envelope, drive to and enter a Green Building at an address which has been linked to a drug cartel while holding a white envelope, and leave the building carrying a white/pinkish plastic bag that appeared to contain about 5-10 pounds of an unknown object.

### F.  Interactions with Undercover Agent Observed during Surveillance

On March 23, 2021, at about 9:34 p.m., an investigator acting in an undercover capacity called your client's phone number ending in -9519 and sent her a text message to that same number. Your client responded via text message to the investigator. Just before the investigator received your client's text message, another investigator saw your client stop walking, look down at her phone, and appear to manipulate a cellphone in her hand. At about 11:03 p.m., another investigator saw your client's car parked in her spot # 204 in the parking structure attached to her apartment complex and saw your client walking to nearby elevators.

### G.  Possession of Charged and Uncharged Drugs, Drug-Related Materials and Paraphernalia, Digital Devices with Drug-Related Content, and Documents containing Personal Identifying Information

On March 24, 2021, at about 3:45 p.m., investigators began executing the federal search warrants. Investigators stopped your client, who was in her car, at a Mobil gas station just north of her apartment complex. In her car, investigators found $200, Bank of America receipts, and her cellphone linked to the -9519 number, on which investigators later saw numerous text messages about drugs and drug distributions with several drug customers and contacts containing the word "Driver" in the contact name, including but not limited to Courier A and Courier B. Investigators also saw several financial and banking applications on your client's phone, including Venmo, Zelle, Paypal, Cash App, Capital One and Bank of America.

RE: U.S. v. Mirela Todorova
December 2, 2021
Page 5

      Inside your client's apartment, investigators found and seized about 52 DEA drug exhibits, including but not limited to pills, powders, and laboratory-confirmed drugs including but not limited to cocaine, MDMA, ketamine, fentanyl, mushrooms, and lidocaine. Investigators also found drug packaging materials and paraphernalia such as baggies, empty pill capsules, and scales. Investigators further found your client's U.S. and Mexican currency, clothing, and various documents containing your client's personal identifying information, including but not limited to her Bulgarian, Canadian, and United States passports. Investigators also found the following digital devices:

- A gold colored Apple iPhone cellular telephone with a clear case identified on the back as "Model A1661" ("Digital Device 1"), found near suspected illegal drugs in the apartment hallway, near the front door;

- A white Apple iPhone cellular telephone with a cracked/damaged screen identified on the back as "Model A1456" ("Digital Device 2") found in top left drawer of a bedroom dresser with pills found in nearby dresser drawer to the right; and

- A silver HP laptop computer with Serial Number GSC1014071 ("Digital Device 3"), found in a bedroom closet near lidocaine.

Investigators photographed content from your client's personal phone regarding, among other things, drugs, messages with other "Driver" contacts about delivering drugs and transferring payments, and messages with clients. Additionally, extractions of data from your client's digital devices contain, among other things, photographs of drug menus, screen shots of messages with drug delivery drivers and drug customers, and screen shots of various financial transfers.

      \*      \*      \*

      With this letter, the government also requests all reciprocal discovery to which it is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure. The government again requests notice of any intention of your client to rely on an entrapment defense, or a defense involving mental condition or duress, and/or an alibi defense. Please let me know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,

  /S/

PATRICK CASTAÑEDA
JASON C. PANG
Assistant United States Attorneys
International Narcotics, Money Laundering,
& Racketeering Section