TRACY WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
PATRICK CASTAÑEDA (Cal. Bar No. 319431)
JASON C. PANG (Cal. Bar No. 296043)
Assistant United States Attorneys
International Narcotics, Money Laundering,
& Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0637/2652
    Facsimile: (213) 894-0142
    E-mail: Patrick.Castaneda@usdoj.gov
            Jason.Pang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00244-VAP |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S PRIOR ACTS |
| v. | |
| MIRELA TODOROVA, aka "Mirela Dimitrova Todorova" and "Mimi Todorova," | Hearing Date: February 28, 2022<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom of the Hon. Virginia A. Phillips |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Patrick Castañeda and Jason C. Pang, hereby files its opposition to defendant MIRELA TODOROVA's motion in limine to exclude evidence of other acts.

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, the government's motion in limine to admit defendant's prior acts (Dkt. 45), which is incorporated herein by reference, and such further evidence and argument as the Court may permit.

Dated: January 31, 2022                    Respectfully submitted,

                                           TRACY L. WILKISON
                                           United States Attorney

                                           SCOTT M. GARRINGER
                                           Assistant United States Attorney
                                           Chief, Criminal Division


                                              /s/
                                           _____
                                           PATRICK CASTAÑEDA
                                           JASON C. PANG
                                           Assistant United States Attorneys

                                           Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Mirela Todorova ("defendant") moves in limine to wholly exclude evidence that is admissible as inextricably intertwined with the charged conduct or that falls squarely within Federal Rule of Evidence 404(b).[1] The government's motion in limine to include defendant's prior acts (Dkt. 45; the "Government's Motion") is incorporated herein by reference and addresses most of defendant's arguments. Based on Ninth Circuit law, this Court should deny defendant's motion as described below.

**II.   ARGUMENT**

   **A.   Death of R.M.**

As detailed in the Government's Motion, the death investigation remains ongoing, and the government does not intend to introduce evidence regarding the death itself in its case-in-chief unless defendant opens the door or challenges that she was under investigation.

   **B.   Defendant's Text Messages**

While the government does not intend to introduce evidence regarding R.M.'s death in its case-in-chief unless defendant opens the door, the government does intend to introduce text message evidence to prove acts that are inextricably intertwined with the charged conduct and/or admissible under Federal Rule of Evidence 404(b) as summarized in the Government's Motion and described herein.

---

[1] Defendant's motion also seeks to exclude the government's use of a drug expert (Dkt. 43 at 5-6), which the government will respond to in a separate opposition.

1    Defendant's assertion that "[a]ny text messages" cannot be
2 connected to defendant "as the actual sender" is incorrect. (Dkt. 43
3 at 2.) To establish authenticity under Federal Rule of Evidence 901,
4 the government "need only make a prima facie showing" because "[t]he
5 rule requires only that the court admit evidence if sufficient proof
6 has been introduced so that a reasonable juror could find in favor of
7 authenticity or identification." United States v. Black, 767 F.2d
8 1334, 1342 (9th Cir. 1985) (internal quotations omitted). And the
9 government may link defendant to the proposed evidence by
10 circumstantial and direct evidence. Id. Once that relatively low
11 threshold is met, "[t]he credibility or probative force of the
12 evidence offered is, ultimately, an issue for the jury." Id.; see
13 also United States v. Morel-Pineda, 829 F. App'x 187, 191 (9th Cir.
14 2020) (citing Black and rejecting defendant's contention that the
15 district court erred in admitting text messages between defendant and
16 third parties when the number in the messages was the one the third-
17 party used to communicate with defendant, and a phone with that
18 number was found upon searching defendant's apartment.)
19    Here, defendant's full first and last name, DMV license name
20 "Mimi," email address, and 9519 phone number were found in R.M.'s
21 cellphone as a saved contact, "Mimi Snowie." In the November 2020
22 fatal distribution text messages, R.M. referred to defendant as
23 "babe" and "Mimi." Later, at least one of defendant's drug delivery
24 drivers -- Courier A -- voluntarily told DEA that he met defendant
25 and worked three drug delivery shifts for her in mid-March 2021.
26 Courier A's digital devices show that he saved defendant's 9519
27 number under the contact "mimi." On March 23, 2021, law enforcement
28 contacted defendant's 9519 number and witnessed her respond via text

message. On March 24, 2021, defendant's cellphone linked to the 9519 number was found in her car after she was removed from it pursuant to the federal search warrants. Accordingly, the government can and will meet its burden of admissibility at trial, and the jury should be left to decide the credibility and probative force of such evidence.

### C. Evidence Lawfully Seized from Defendant's Apartment

Defendant's attempt to exclude uncharged drugs and "other contraband" found in her apartment by conclusory reference to Federal Rules of Evidence 401 and 403 is not supported by Ninth Circuit law. First, as detailed in the Government's Motion, such evidence is part of a "single criminal episode" and thus "inextricable from and provide[] necessary context . . . about the charged conduct." United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) (internal quotations omitted). Second, the search warrants and all the drug-related contraband seized from her apartment are "obviously necessary . . . for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of [defendant's] crime." Vizcarra, 66 F.3d at 1013.

Alternatively, the evidence is admissible under Rule 404(b) to show defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The charged and uncharged drugs need not be identical because it is well-settled that the Ninth Circuit "look[s] to the type of activity undertaken, rather than the precise identity of the drugs, as the relevant factor." United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005) ("[w]hen offered to prove knowledge, ... the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's

knowledge more probable than it would be without the evidence"); see also United States v. Bibo-Rodriguez, 922 F.2d 1398, 1402 (9th Cir. 1991) (finding that an uncharged subsequent act of transporting marijuana was "highly probative . . . not unfairly prejudic[ial] . . . relevant and admissible to show [defendant] knew that he was" carrying the charged cocaine across the border).

Likewise, a conspiracy charge is not necessary to admit proof of other illegal conduct. See United States v. Beckman, 298 F.3d 788 (9th Cir. 2002) (in a non-conspiracy drug case, affirming district court's admission of evidence relating to uncharged "prior drug runs" as both inextricably intertwined and proof of "knowledge, intent, and lack of mistake"); see also United States v. Birrueta, No. 13-CR-2134-TOR, 2014 WL 11369624 (E.D. Wash. Mar. 21, 2014).

**D.   Interview with Customs and Border Patrol ("CBP")**

Defendant's statements to CBP upon her reentry to the United States from Mexico less than three weeks before the execution of the search warrants should be admitted. Although defendant had already rented an apartment in Hollywood and had a United States phone number ending in 9519, she told CBP she lived with her parents in Newbury Park, California, provided a phone number associated with her parents' address, and stated she did not have a United States phone number. Defendant's statements and omissions were part of her "single criminal episode" of possessing numerous narcotics with intent to distribute and thus inextricably intertwined with the charges.

Alternatively, defendant's concealment of her Hollywood apartment, which contained numerous drugs, and her United States number is admissible under Rule 404(b) because it proves her drug trafficking motives and intent, knowledge of the charged drugs, and

plans and preparation to hide the charged drugs. References to her parent's address also confirms her identity. These acts occurred within the same month as the search warrants and were thus not too remote. The evidence is also sufficient given that it will be based on the CBP officer's personal knowledge of defendant's statements. Factual similarity is not required because the evidence is offered to prove both intent and another issue allowed by Rule 404(b). See United States v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir. 1993).

### E. Couriers A and B

As detailed in the Government's Motion, defendant's acts involving Couriers A and B are highly relevant, not unfairly prejudicial, and admissible under Ninth Circuit law as inextricably intertwined with the charged conduct or under Rule 404(b). See, e.g., Beckman, 298 F.3d at 793-94 (finding evidence regarding defendant's uncharged prior drug run as a courier a month prior to the charged conduct admissible as both inextricably intertwined and under Rule 404(b)). As in Beckman, such evidence shows defendant's identity, knowledge, intent, plans, and lack of mistake; the acts occurred within a month of defendant's arrest; they are sufficiently provable based on third-party observations and documentary evidence; and they are similar enough to the charged crimes. Id. at 794.

Defendant's conclusory counterarguments are unavailing. As noted above, a "precise identity of the drugs" is not required. Vo, 413 F.3d at 1018. Second, evidence that is inextricably intertwined or admissible under Rule 404(b) is not bad character evidence. Third, as explained above, there is a nexus between the defendant and the couriers based on their interactions and communications.

5

### F. Suspected Drug Distributions

As detailed in the Government's Motion, law enforcement's observations of defendant's numerous suspected drug distributions a short time before the search warrant executions are relevant and admissible as inextricably intertwined or under Rule 404(b). First, such evidence is inextricably intertwined with the charged conduct as part of defendant's "single criminal episode" of drug trafficking in at least March 2021. Williams, 989 F.2d at 1070. The evidence will show that defendant not only directed couriers to deliver drugs for her, but she also delivered drugs to customers herself. Such evidence should not be precluded merely because defendant has been "indicted for less than all of [her] actions." Id. Second, this evidence is "obviously necessary" to explain why and how law enforcement obtained the search warrants and ultimately found the charged drugs, uncharged drugs, and various drug trafficking tools in defendant's apartment. Vizcarra, 66 F.3d at 1013. Indeed, courts in the Ninth Circuit and elsewhere admit such evidence. See, e.g., Birrueta, 2014 WL 11369624, at *3-4 (finding officer's observations of defendant's involvement in suspected hand-to-hand transactions "relevant and more probative of intent than unfairly prejudicial." ); see also United States v. Shores, 700 F.3d 366, 371 (8th Cir. 2012) (finding evidence regarding uncharged hand-to-hand distribution as sufficiently intertwined with charged offenses and noting that such evidence provided a portion of the probable cause underlying the search warrant).

Under Rule 404(b), such evidence shows at least defendant's identity, knowledge, intent, plan, and lack of mistake in engaging in drug distributions; the acts occurred within a month of defendant's

arrest; they are sufficiently provable based on law enforcement's observations; and they are similar enough to the charged crimes.

### G. Suspected Drug Cartel

Law enforcement's observations of defendant obtaining three stacks of cash from a Bank of America, entering a building linked to a drug cartel, and leaving with a weighted plastic bag just over one week before the search warrant executions is relevant and admissible as inextricably intertwined or under Rule 404(b). First, defendant's conduct is inextricably intertwined with the charged conduct insofar as the they are part of defendant's "single criminal episode" of drug trafficking in at least March 2021. Williams, 989 F.2d at 1070. Second, this evidence was a portion of the relevant probable cause and is "obviously necessary" to explain why and how law enforcement obtained the search warrants and ultimately found the drug-related contraband in defendant's apartment. Vizcarra, 66 F.3d at 1013.

Alternatively, under Rule 404(b), visiting a cartel-linked stash house shows defendant's knowledge, plan, motive, opportunity, and lack of mistake in collecting drugs for resale as well as her preparation and planning in furtherance of her own drug trafficking activities. Law enforcement's observations of her also establish her identity. Second, these acts occurred within the same month of the search warrants and were thus not too remote. Third, the evidence is sufficient given that it will be based on law enforcement's observations and messages in coded language from defendant's 9519 number identifying that address as a source of drugs as late as February 2021. Finally, factual similarity is not required because the evidence is offered to prove both intent and another issue allowed by Rule 404(b). See Arambula-Ruiz, 987 F.2d at 603.

**H.  Communications with Undercover Agents**

While surveilling defendant, an agent acting in an undercover capacity called defendant's 9519 phone number. Defendant did not answer the phone; instead, she sent a text message to the agent and just before doing so, another agent saw defendant manipulate her phone. This evidence, along with the fact that agents used court-authorized GPS on that phone number to aid in surveilling defendant and then seized the phone corresponding to that number from defendant's car, shows that the acts were inextricably intertwined with her ongoing drug trafficking activities as both part of her "single criminal episode" and as "obviously necessary" for the government to explain why defendant specifically was the target of the search warrants underlying the charged conduct.

Alternatively, defendant's communications with undercover agents are admissible under Rule 404(b) because they shows her identity, plan, and absence of mistake while rebutting defendant's attempts to distance herself from her 9519 number and the phone seized from her car a day later. Fed. R. Evid. 404(b). These acts were not too remote because they occurred a day before the search warrant. The evidence is sufficient as it's based on law enforcement's observations. Finally, factual similarity is not required because the evidence is offered to prove both intent <u>and</u> another issue allowed by Rule 404(b). <u>See</u> <u>Arambula-Ruiz</u>, 987 F.2d at 603.

**I.  Possession of Uncharged Drugs, Drug-Related Materials, Digital Devices with Drug-Related Content, and Documents containing Personal Identifying Information**

As detailed in the Government's Motion and in sections II., B-C., above, this evidence is relevant and admissible as inextricably intertwined or under Rule 404(b). This evidence is part of

8

defendant's ongoing "single criminal episode" of possessing numerous drugs with intent to distribute. It is also "obviously necessary" for the government to explain why and how the charged drugs were obtained via search warrant. Such evidence is quintessential drug trafficking evidence admissible to show knowledge, intent, opportunity, preparation, and plan. See, e.g., United States. v. Martinez, 967 F.2d 1343 (9th Cir. 1992) (finding amount of drugs, presence of packaging, scales, a pager, and transcript of telephone conversation in which defendant discussed "possible" drug transactions sufficient evidence to prove intent to distribute).

Moreover, the contemporaneous presence of documents bearing defendant's personal identifying information (passports, banking documents, mail, etc.) is relevant to tie her to the drugs, digital devices, and drug trafficking materials in the apartment. See United States v. Cruz, 993 F.2d 885 (9th Cir. 1993) (rejecting defendant's claim that evidence was insufficient to tie him to drugs found in his mobile home when he owned it, had a key to it on his key ring, gave out its address as his residence, had been in it the day before his arrest and on multiple prior occasions, had several documents bearing his name next to a drug ledger in his bedroom, and had his address book in it). As detailed above, the government can and will meet its burden of admissibility regarding defendant's text messages, and the jury should be allowed to weigh credibility and probative force. See Black, 767 F.2d at 1342; Morel-Pineda, 829 F. App'x at 191.

### J. Defendant's Bank Accounts and Money Transfers

Since 2020, defendant has received at least $733,000 via five peer-to-peer ("P2P") payment applications, which were then transferred to defendant's bank accounts, despite also taking EDD

9

unemployment benefits for a significant period of that time. Indeed, the evidence will show that defendant sought payments from drug customers via P2P applications such as CashApp, Zelle, Apple Pay, Venmo, and PayPal. This evidence is inextricably related to defendant's "single criminal episode" of drug trafficking and also shows her motive in engaging in such conduct.

Alternatively, this evidence proves the material points of "motive . . . intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Such evidence shows her financial motives, her technological knowledge and savvy plans, the accounts associated with her identifiers show her identity, and the sheer volume cuts against any claims of mistake. Second, these acts occurred within the last two years and were thus not too remote. Third, the evidence is sufficient given that it will be based on, at least, documentary evidence admissible under Rules 803(6) and/or 902(11). Finally, factual similarity is not required because the evidence is offered to prove both intent and another issue allowed by Rule 404(b). See Arambula-Ruiz, 987 F.2d at 603.

**K.   Defendant's Prior Convictions**

The government does not intend to introduce defendant's prior convictions in its case-in-chief unless defendant opens the door, including but not limited to, by asserting that she has no prior convictions or arrests and/or no history of substance-related issues.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion.