FILED
CLERK, U.S. DISTRICT COURT

**4/3/2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MIRELA TODOROVA,<br>　aka "Mirela Dimitrova<br>　　Todorova,"<br>　aka "Mimi,"<br>　aka "$clubmimi,"<br>　aka "clubmimi,"<br>　aka "mimiclub,"<br>　aka "123mimi@gmail.com,"<br>　aka "John Mitchell,"<br>　aka "johnmitchell123<br>　　@mail.com,"<br>MUCKTARR KATHER SEI,<br>　aka "Kather Sei,"<br>　aka "Kat,"<br>CHRISTOPHER Y. MORENO NUNEZ,<br>　aka "Christopher Moreno," and<br>ASHLEY ALICIA NICOLE JOHNSON,<br>　aka "Ashley Johnson,"<br><br>　　　　Defendants. | No. 2:21-CR-00244(B)-AB<br><br>S E C O N D<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Distribution of Fentanyl Resulting in Death and Serious Bodily Injury; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(ii), (b)(1)(C): Possession with Intent to Distribute Controlled Substances; 18 U.S.C. § 1001(a)(2): Making False Statements; 21 U.S.C. § 853: Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about March 24, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendants MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," aka "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," MUCKTARR KATHER SEI, aka "Kather Sei," aka "Kat," CHRISTOPHER Y. MORENO NUNEZ, aka "Christopher Moreno," and ASHLEY ALICIA NICOLE JOHNSON, aka "Ashley Johnson," conspired with others known and unknown to the Grand Jury to knowingly and intentionally distribute and possess with intent to distribute the following controlled substances:

1.   At least 500 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(ii);

2.   Methylenedioxymethamphetamine ("MDMA," "ecstasy," or "molly"), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C); and

3.   Oxycodone, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

The distribution and possession with intent to distribute of said oxycodone that was an object of the conspiracy, but which in fact contained fentanyl, resulted in the death and serious bodily

2

injury of victim R.M., on or about November 16, 2020; the serious bodily injury of victim B.L.H., on or about November 26, 2020; the serious bodily injury of victim S.L., on or about December 12, 2020; and the serious bodily injury of victim H.A., on or about January 9, 2021.

B.    MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendant TODOROVA would obtain drugs, including cocaine, MDMA, and purported oxycodone pills containing fentanyl from unknown sources.

2.    Defendant TODOROVA would provide various drugs, including cocaine, MDMA, and purported oxycodone pills containing fentanyl, to a network of drug delivery drivers, including defendants SEI, MORENO NUNEZ, and JOHNSON, for further distribution to customers.

3.    Defendants TODOROVA and SEI would make, mix, and package drugs for distribution to drug customers.

4.    Defendant TODOROVA would distribute cellphones to drug delivery drivers, including defendants SEI, MORENO NUNEZ, and JOHNSON, to facilitate sales and deliveries of drugs to customers.

5.    Defendants TODOROVA, SEI, MORENO NUNEZ, and JOHNSON, and other drug delivery drivers would provide drugs directly to customers, who paid for the drugs via peer-to-peer financial applications or with cash.

6.    Defendant TODOROVA would pay her drug delivery drivers via peer-to-peer financial applications or with cash.

C.    UNDERLINE OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants TODOROVA, SEI, MORENO NUNEZ, and JOHNSON, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On June 17, 2020, using coded language in text messages, defendant TODOROVA directed defendant SEI to specific drug customers for drug deliveries and instructed defendant SEI about pricing for drug deliveries.

Overt Act No. 2:    On June 19, 2020, defendant TODOROVA provided her CashApp username, "$clubmimi," to defendant SEI via text message to facilitate the transfer of drug payments from customers and wages for defendant SEI's drug-related work.

Overt Act No. 3:    On June 25, 2020, using coded language in text messages, defendant TODOROVA directed defendant SEI to deliver various drugs to customers and instructed defendant SEI to come to her apartment with his notes, the remaining drugs, and the cash defendant SEI collected from customers for the drugs, minus his pay for his work.

Overt Act No. 4:    On July 10, 2020, in text messages, defendant TODOROVA instructed defendant SEI as follows: "Please try to fit all the deliveries in 6 hours of work. I can't afford to pay more. I suggest 6pm to midnight because there's less traffic but it's up to you. Also, please paste the menu each time a client texts, and text an ETA (of 5 to 40min) as soon as a client texts an address. Don't text me unless it's an emergency. I'll give you a week off

4

starting Sunday and then I'll go to Mexico for a week (you'll make around $200 a day)."

Overt Act No. 5:    On July 11, 2020, using coded language in text messages, defendant TODOROVA sent defendant SEI an address in Long Beach, California for a drug delivery, and defendant SEI later responded, "Tell them I am here. White Honda Civic parked to the right at the corner by the Long Beach Cafe sign."

Overt Act No. 6:    On July 19, 2020, in text messages, defendant TODOROVA informed defendant SEI, "I'm going to need you for just one short delivery today at 7pm my apt if you want," and defendant SEI said he would.

Overt Act No. 7:    On July 26, 2020, in text messages, defendant TODOROVA instructed defendant SEI to "come bring the cash, or CashApp me. Total is $420, plus $60 for the addys if you want to keep them."

Overt Act No. 8:    On July 29, 2020, after a drug customer asked about defendant TODOROVA's pet jaguar, "[P]rincess," defendant TODOROVA replied in a text message, "she's good I'll go see her next week" and then, using coded language, sent the drug customer a menu of various drugs, including cocaine, MDMA, and Xanax.

Overt Act No. 9:    On July 29, 2020, in text messages, the drug customer replied, "I had some guy text me from your number named John Mitchell," and defendant TODOROVA responded, "It's my fake iCloud name[.] This is my phone number text me here."

Overt Act No. 10:    On July 31, 2020, using coded language in text messages, defendant TODOROVA gave defendant SEI a drug customer's address, told defendant SEI to give the customer ten Xanax pills, and instructed him to "Park, walk to the backhouse, climb the

outdoor staircase and ring the doorbell. She is home for sure[.] This is my close friend don't worry."

Overt Act No. 11:    On August 1, 2020, in text messages, defendant TODOROVA instructed defendant SEI to check the "Notes" section of a cellphone she provided defendant SEI for drug deliveries and to send the following message: "Delivery available every night: I have C, M, E, K, addy, xan, pink 2CB, Viagra, norcos, and mushrooms Cash, CashApp, Zelle, or Apple Pay."

Overt Act No. 12:    On August 4, 2020, using coded language in text messages, defendant TODOROVA informed defendant SEI that she would see him in a week to "divide the cash" and that they would package some MDMA and cocaine "for extra cash, if you have time," and defendant SEI replied "Cool."

Overt Act No. 13:    On August 6, 2020, using coded language in text messages discussing ketamine, defendant TODOROVA told defendant SEI, "Just remember to say everything is clean."

Overt Act No. 14:    On August 11, 2020, using coded language in text messages, defendant TODOROVA instructed defendant SEI to bring drug delivery materials to her apartment, and defendant SEI said he would.

Overt Act No. 15:    On August 24, 2020, in text messages, defendant TODOROVA instructed defendant SEI, "Tomorrow drop off my key (fob), all cash, and all materials inside my door next to my shoes."

Overt Act No. 16:    On September 19, 2020, using coded language in text messages, defendant SEI asked defendant TODOROVA to make more cocaine, and defendant TODOROVA replied, "Ok."

Overt Act No. 17:   On September 19, 2020, using coded language in text messages, defendant SEI informed defendant TODOROVA that he did not have any ketamine for a customer, and defendant TODOROVA instructed defendant SEI to come to her apartment for the ketamine.

Overt Act No. 18:   On September 21, 2020, in text messages, defendant TODOROVA instructed defendant SEI to "Come by if you need any more materials and start driving at 5 or 6pm" and further stated, "You owe me cash later tonight," to which defendant SEI replied, "Yes mimi we know that."

Overt Act No. 19:   On September 24, 2020, using coded language in text messages, a drug customer asked defendant TODOROVA if the oxycodone pills contained fentanyl, and defendant TODOROVA replied that the pills were "real and safe."

Overt Act No. 20:   On September 26, 2020, using coded language in text messages, defendant TODOROVA informed defendant SEI that she had 41 oxycodone pills, 17 MDMA pills, 49 Adderall pills, 11 xanax pills, ketamine, and cocaine.

Overt Act No. 21:   On September 30, 2020, in text messages, defendant SEI instructed defendant MORENO NUNEZ to work "tonight and tomorrow and you and I will tackle Friday and Saturday like we do," and defendant MORENO NUNEZ replied, "Perfect sounds like a plan."

Overt Act No. 22:   On October 6, 2020, using coded language in text messages, a drug customer informed defendant TODOROVA, "Yo mimi the oxys are dirty," referring to oxycodone pills, and asked whether the pills were pressed or contained fentanyl, and defendant TODOROVA replied that the oxycodone pills were real prescription pills without fentanyl.

Overt Act No. 23:   On October 6, 2020, in text messages, after defendant TODOROVA instructed defendant MORENO NUNEZ to meet defendant SEI "at 6 for work tonight," defendant MORENO NUNEZ told defendant SEI, "Hey I'm here[.] I'm in my friends car black Nissan my cars in the shop till tomorrow."

Overt Act No. 24:   On October 9, 2020, defendant JOHNSON drove a "Black Nissan" to an address provided in text messages by defendant TODOROVA to meet defendant SEI to deliver drugs to various customers that night.

Overt Act No. 25:   On October 9, 2020, in text messages, defendant SEI told defendant TODOROVA, "Check Zac Melrose. Saying the blues are fake," referring in coded language to oxycodone pills, and defendant TODOROVA replied, "I did thanks."

Overt Act No. 26:   On October 10, 2020, using coded language in text messages, defendant TODOROVA instructed defendant SEI, "Hey please check the work phone and start organizing orders."

Overt Act No. 27:   On October 12, 2020, in text messages, defendant TODOROVA instructed defendant SEI to "Make sure you collect all cash and bag from Ashley," referring to defendant JOHNSON.

Overt Act No. 28:   On October 12, 2020, using coded language in text messages, defendant SEI informed defendant TODOROVA that he needed take the week off, and defendant TODOROVA replied, "Please work today because I'm still out of town."

Overt Act No. 29:   On October 14, 2020, using coded language in text messages, defendant TODOROVA asked defendant SEI to return her apartment keys.

Overt Act No. 30:   On October 31, 2020, in text messages, defendant SEI asked defendant MORENO NUNEZ, "I'm heading home. Want

8

to pass by to grab phone/supplies after party?," and defendant MORENO NUNEZ replied, "Yes[.] I'll stop by your place."

Overt Act No. 31:   On October 31, 2020, in text messages, defendant TODOROVA instructed defendant JOHNSON to "Please come pick up stuff from my apt now[.] It's ready for you[.] Then please meet Kather," referring to defendant SEI, and defendant JOHNSON replied, "Here."

Overt Act No. 32:   On November 5, 2020, in text messages, defendant TODOROVA told defendant SEI that defendant TODOROVA "finally" has Venmo and PayPal and that her Venmo username was "@clubmimi" and her Paypal username was "123mimi@gmail.com."

Overt Act No. 33:   On November 6, 2020, in text messages, defendant MORENO NUNEZ told defendant SEI, "I pretty much worked 7 hours[.] It died down[.] So my payout will be 175."

Overt Act No. 34:   On November 7, 2020, in text messages, defendant TODOROVA provided defendant SEI with an address and instructed him to "deliver blues," which is coded language for oxycodone pills.

Overt Act No. 35:   On November 9, 2020, in text messages, defendant SEI asked defendant TODOROVA if she had "more blues," which is coded language for oxycodone pills, and on or about November 10, 2020, defendant TODOROVA replied, "Tomorrow."

Overt Act No. 36:   On November 11, 2020, in text messages, defendant SEI asked defendant JOHNSON, "Hey, quick question. Did mimi," referring to defendant TODOROVA, "collect supplies/phone from you last night?," and defendant JOHNSON replied, "Yes she did."

Overt Act No. 37:   On November 15, 2020, in text messages, after a drug customer contacted defendant TODOROVA for drugs,

defendant TODOROVA replied, "Yes please text order and address to my driver" and provided defendant SEI's personal cellphone number.

Overt Act No. 38:  On November 15, 2020, after a drug customer, victim R.M., placed an order for drugs to defendant TODOROVA's phone number, defendant SEI delivered one gram of cocaine and two purported oxycodone pills containing fentanyl to victim R.M. at victim R.M.'s home.

Overt Act No. 39:  On November 16, 2020, after R.M. requested a trade of the one gram of cocaine for five purported oxycodone pills containing fentanyl, defendant SEI returned to victim R.M.'s home, called victim R.M. from a cellphone that defendant TODOROVA provided defendant SEI for use in coordinating drug sales, and delivered five additional purported oxycodone pills containing fentanyl to victim R.M.; the use of the purported oxycodone pills containing fentanyl and delivered by defendant SEI to victim R.M. on November 15 and 16, 2020, resulted in the death and serious bodily injury of victim R.M., on or about November 16, 2020.

Overt Act No. 40:  On November 16, 2020, after a customer asked for Xanax bars, using coded language in text messages, defendant TODOROVA responded that she would have them at the end of the week when she got back from Mexico.

Overt Act No. 41:  On November 17, 2020, in text messages, defendant TODOROVA told a potential drug customer, "I have oxys 30mgs," which is coded language for oxycodone pills.

Overt Act No. 42:  On November 17, 2020, in text messages, defendant SEI told defendant TODOROVA that the bill for the cellphone defendant TODOROVA provided defendant SEI for drug deliveries needed

to be paid, and defendant TODOROVA later confirmed, "Phone bill is paid."

Overt Act No. 43:   On November 17, 2020, in text messages, defendant SEI told defendant TODOROVA, "Since I am by myself all this week. If people want to come pick up please let them."

Overt Act No. 44:   On November 17, 2020, after a drug customer ordered cocaine and MDMA, using coded language in text messages, defendant TODOROVA texted defendant SEI's personal cellphone number and provided defendant SEI with that customer's phone number, delivery address, and drug order, stating "Text or call him please with an ETA."

Overt Act No. 45:   On November 18, 2020, in text messages, defendant TODOROVA then told that drug customer to "Call my driver to find out ETA" and gave the customer defendant SEI's personal cellphone number.

Overt Act No. 46:   On November 19, 2020, defendant JOHNSON informed defendant SEI, "Hey so I'm working for Chris," referring to defendant MORENO NUNEZ, "this Friday and Saturday."

Overt Act No. 47:   On November 19, 2020, using coded language in text messages, after a drug customer asked defendant TODOROVA for MDMA, defendant TODOROVA replied, "Ok text me your order . . . I'm in Mexico with my jaguar for the next couple days[.] But my driver is available. Then I'll be back in LA."

Overt Act No. 48:   On November 19, 2020, in text messages, defendant TODOROVA instructed defendant SEI, "If Venmo asks for the last 4 digits of my phone number during a payment, they are 7924."

Overt Act No. 49:   On November 19, 2020, using coded language in text messages, defendant TODOROVA provided a drug customer with

defendant SEI's home address to pick up drugs, and instructed one drug customer, "When 10min away, call my assistant waiting for you" and provided defendant SEI's personal cellphone number.

Overt Act No. 50:  On November 19, 2020, in text messages, defendant SEI told defendant TODOROVA, "Hey, no more pick ups from my house please," and defendant TODOROVA replied, "Ok. I knew you wouldn't like it eventually. I always prefer deliveries bc they're safer."

Overt Act No. 51:  On November 19, 2020, using coded language in text messages, defendant TODOROVA instructed defendant SEI to inform her if he ran out of cocaine and further stated, "I'll tell you how to make more in 5min."

Overt Act No. 52:  On November 20, 2020, using coded language in text messages, after a drug customer asked defendant TODOROVA for cocaine, defendant TODOROVA replied, "I'm on vacation today but call my driver" and provided a phone number corresponding to a cellphone defendant TODOROVA provided to defendant SEI for use in coordinating drug deliveries.

Overt Act No. 53:  On November 22, 2020, in text messages, defendant SEI told defendant TODOROVA, "Let me know when you are scheduled to fly back so I know when to leave the door unlocked so you aren't stuck outside again."

Overt Act No. 54:  On November 23, 2020, using coded language in text messages, defendant TODOROVA instructed defendant SEI how to make and package cocaine by taking cocaine and lidocaine from under defendant TODOROVA's sink and mixing them in a blender.

Overt Act No. 55:  On November 24, 2020, in text messages, defendant SEI told defendant MORENO NUNEZ, "I would say also stop

1  around like 1:30ish the streets get so empty now with curfew that you

2  really stick out driving around," and defendant MORENO NUNEZ replied,

3  "Yes I feel that."

4      <u>Overt Act No. 56:</u>  On November 24, 2020, in text messages,

5  defendant TODOROVA responded to a potential drug customer, "Please

6  text my driver directly when you're ready for delivery today or

7  tomorrow" and gave the customer defendant SEI's name, "Kather," and

8  personal cellphone number.

9      <u>Overt Act No. 57:</u>  On November 25, 2020, in text messages,

10  defendant TODOROVA instructed defendant SEI to give "Eric" $5,000 for

11  1,000 "blues," which is coded language for oxycodone pills, and added

12  that defendant TODOROVA has "met him before. He's a solid friend."

13      <u>Overt Act No. 58:</u>  On November 25, 2020, using coded language

14  in text messages, defendant TODOROVA told defendant SEI that "Eric"

15  had arrived and instructed defendant SEI to "Meet him in your white

16  Honda downstairs."

17      <u>Overt Act No. 59:</u>  On November 25, 2020, using coded language

18  in text messages, defendant SEI confirmed receipt of the 1,000

19  oxycodone pills to defendant TODOROVA.

20      <u>Overt Act No. 60:</u>  On November 26, 2020, after a drug customer,

21  victim B.L.H., placed an order for drugs to defendant TODOROVA's

22  phone number, defendant MORENO NUNEZ delivered three purported

23  oxycodone pills containing fentanyl to victim B.L.H., the use of

24  which resulted in the serious bodily injury of victim B.L.H., on or

25  about November 26, 2020.

26      <u>Overt Act No. 61:</u>  On November 26, 2020, in text messages,

27  defendant MORENO NUNEZ told defendant SEI that defendant MORENO NUNEZ

28

1  "started at 4" and "It's thanksgiving don't give a fuck about the
2  feinds [sic]."

3      Overt Act No. 62:   On November 27, 2020, using coded language
4  in text messages, defendant TODOROVA informed defendant SEI that she
5  was on her way to defendant SEI's apartment, and that defendant
6  TODOROVA needed the key to her apartment.

7      Overt Act No. 63:   On November 28, 2020, in text messages,
8  defendant JOHNSON asked defendant SEI, "Can u meet me at my place,"
9  and defendant SEI replied, "I don't think we need to meet, you have
10 the supplies."

11     Overt Act No. 64:   On December 4, 2020, in text messages,
12 defendant TODOROVA told defendant SEI "Someone sent Venmo the day
13 before yesterday to your account by accident," and instructed
14 defendant SEI to "Please cashapp it to me."

15     Overt Act No. 65:   On December 11, 2020, in text messages,
16 defendant TODOROVA told defendant SEI to "[c]oordinate" with another
17 drug delivery driver, provided defendant SEI with a phone number for
18 that drug delivery driver, told defendant SEI that defendant TODOROVA
19 forgot to give the other drug delivery driver MDMA, and instructed
20 defendant SEI to "share" MDMA with the other drug delivery driver to
21 deliver to drug customers.

22     Overt Act No. 66:   On December 12, 2020, using coded language
23 in text messages, defendant SEI informed defendant TODOROVA that
24 defendant SEI needed more MDMA, and defendant TODOROVA instructed
25 defendant SEI to "come to my apt in 30min."

26     Overt Act No. 67:   On December 12, 2020, after a drug customer,
27 victim S.L., placed an order for drugs to defendant TODOROVA's phone
28 number, defendant SEI delivered four purported oxycodone pills

1  containing fentanyl to victim S.L., the use of which resulted in the
2  serious bodily injury of victim S.L., on or about December 12, 2020.

3      Overt Act No. 68:   On December 16, 2020, using coded language
4  in text messages, defendant TODOROVA sent a menu of drugs available
5  for sale, including cocaine and oxycodone pills, to victim R.M.'s
6  cellphone number even though victim R.M. had already died.

7      Overt Act No. 69:   On December 19, 2020, in text messages,
8  defendant TODOROVA instructed defendant SEI, "Please come to my apt
9  1pm, let yourself in and give Ashley," referring to defendant
10 JOHNSON, "the two black bags. I think they are still full, but check
11 inside. Then, if you have time, make more baggies for tonight for you
12 and Luis, and call Luis to start by 7pm. All the phones are working
13 normally now. I'm going to sleep until my flight leaves."

14     Overt Act No. 70:   On December 20, 2020, using coded language
15 in text messages, defendant SEI informed defendant TODOROVA that
16 defendant SEI had no ketamine, and defendant TODOROVA instructed
17 defendant SEI to come get more ketamine from defendant TODOROVA's
18 apartment.

19     Overt Act No. 71:   On December 22, 2020, in text messages,
20 defendant TODOROVA asked defendant SEI if he had both of the "work
21 phones" that defendant TODOROVA gave to her drug delivery drivers to
22 facilitate drug deliveries, as well as the drug proceeds defendant
23 TODOROVA's other drug delivery drivers received; defendant SEI
24 reminded defendant TODOROVA that she collected drug proceeds from the
25 drug delivery drivers herself on Friday night.

26     Overt Act No. 72:   On December 23, 2020, using coded language
27 in text messages, defendant TODOROVA instructed defendant SEI, "While
28 I'm out of town I prefer a minimum amount of employees, like one or

1  two, not five people handling the cash. So we can keep people
2  accountable."

3    <u>Overt Act No. 73:</u>   On December 28, 2020, using coded language
4  in text messages, defendant TODOROVA instructed defendant SEI to make
5  drugs, including ketamine, using supplies from her apartment.

6    <u>Overt Act No. 74:</u>   On December 29, 2020, using coded language
7  in text messages, defendant TODOROVA instructed defendant SEI to pick
8  up defendant TODOROVA's mail, make drugs, package drugs, and
9  distribute drugs to other drug delivery drivers, in exchange for an
10  extra $180 for defendant SEI.

11    <u>Overt Act No. 75:</u>   On December 29, 2020, using coded language
12  in text messages, defendant TODOROVA informed defendant SEI that her
13  Zelle account was not working and that "We'll have to scroll through
14  the texts to make sure clients didn't get away with canceled Zelle
15  payments and free stuff."

16    <u>Overt Act No. 76:</u>   On December 30, 2020, using coded language
17  in text messages, defendant TODOROVA instructed defendant SEI to make
18  MDMA in her apartment by using a hammer and blender.

19    <u>Overt Act No. 77:</u>   On December 31, 2020, using coded language
20  in text messages, defendant TODOROVA told defendant SEI that a drug
21  customer without an iPhone would text defendant SEI, and defendant
22  TODOROVA provided defendant SEI with that drug customer's address and
23  drug order for cocaine, MDMA, and ketamine.

24    <u>Overt Act No. 78:</u>   On January 2, 2021, in text messages,
25  defendant TODOROVA instructed defendant SEI to "please reup on G
26  bottles and E from my apt at some point today," and defendant SEI
27  replied, "Where is the E, haven't seen anymore in the apt?"

28

<u>Overt Act No. 79:</u>   On January 8, 2021, after a drug customer, victim H.A., placed an order for drugs to defendant TODOROVA's phone number, defendant JOHNSON delivered fifteen purported oxycodone pills containing fentanyl to victim H.A., the use of which resulted in the serious bodily injury of victim H.A., on or about January 9, 2021.

<u>Overt Act No. 80:</u>   On January 9, 2021, using coded language in text messages, defendant JOHNSON informed defendant SEI that defendant JOHNSON needed more ketamine because "All the orders are pretty much involving k," referring to ketamine.

<u>Overt Act No. 81:</u>   On January 12, 2021, using coded language in text messages, defendant SEI informed defendant TODOROVA that she had to pay the bill for one of the work phones she distributed to her drivers to facilitate drug sales, and defendant TODOROVA later replied, "It's paid now."

<u>Overt Act No. 82:</u>   On January 15, 2021, using coded language in text messages, defendant SEI confirmed to defendant TODOROVA that defendant SEI obtained the ketamine, and defendant TODOROVA later replied, "Don't forgot to cook some k in the oven."

<u>Overt Act No. 83:</u>   On January 16, 2021, using coded language in text messages, defendant JOHNSON asked defendant SEI if defendant TODOROVA gives a discount "if someone orders 12 k," referring to ketamine.

<u>Overt Act No. 84:</u>   On January 18, 2021, using coded language in text messages, defendant SEI informed defendant TODOROVA that defendant SEI worked four days, and defendant TODOROVA replied, "Ok pay yourself $200 less (so only 800 instead of 1000)" and "I would prefer you work the usual 5 days a week, because I hate paying you

less and you're an excellent driver. But if you have acting tonight, I understand."

Overt Act No. 85:   On January 26, 2021, using coded language in text messages, defendant TODOROVA sent a menu of drugs available for sale, including cocaine and oxycodone pills, to R.M.'s cellphone number even though R.M. had already died.

Overt Act No. 86:   On January 26, 2021, in text messages, defendant JOHNSON told defendant SEI, "Hey give me a call[.] It's about an order."

Overt Act No. 87:   On January 29, 2021, using coded language in text messages, defendant JOHNSON told defendant SEI that defendant JOHNSON needed to pick up Xanax bars "ASAP," and defendant SEI replied, "Ready to go with bars[.] Swing by mimi," referring to defendant TODOROVA, "after Best Buy."

Overt Act No. 88:   On January 29, 2021, using coded language in text messages, defendant TODOROVA told defendant SEI that she needed to recover from her trip and instructed defendant SEI to bake ketamine in her kitchen, package drugs for sale, and to help out two other drivers, and defendant SEI replied, "Hey. Ok cool, I will come over around 4pm."

Overt Act No. 89:   On January 31, 2021, in text messages, defendant JOHNSON informed defendant SEI that defendant TODOROVA did not pay defendant JOHNSON for her delivery shift on the preceding Friday, and defendant SEI replied, "Meet me at Ralph's on western and wilshire."

Overt Act No. 90:   On February 1, 2021, in text messages, defendant JOHNSON told defendant SEI, "Hey kat[,] Let me know if u

can meet up tonight and get me paid out and get the bag and phone," and defendant SEI replied, "Sure."

Overt Act No. 91:    On February 1, 2021, using coded language in text messages, defendant TODOROVA instructed defendant SEI to come to her apartment because she needed oxycodone and because she had more cocaine.

Overt Act No. 92:    On February 2, 2021, in text messages, defendant TODOROVA instructed defendant SEI, "Today around 6pm please do me a huge favor and give Ashley," referring to defendant JOHNSON, "your work phone and also the bag from my apartment (I'll leave it by the door). Noah already has the other work phone and other bag[.] She won't be able to start without your phone," and defendant SEI replied, "Cool, got it."

Overt Act No. 93:    On February 5, 2021, using coded language in text messages, defendant TODOROVA asked defendant SEI who had the remaining oxycodone pills, and defendant SEI replied that the pills were with another driver.

Overt Act No. 94:    On February 8, 2021, using coded language in group text messages, defendant TODOROVA told defendant SEI and two other drug delivery drivers to send each customer a menu from the "Notes app of the work phone," record customers' names and specific drug orders, and which "Methods of Payment" to use, including "Venmo to @mimiclub[,] PayPal to 123mimi@gmail.com[,] CashApp to $clubmimi[,] Zelle to this phone number (to Mimi T)[,] [and] Apple Pay to this phone number (text)."

Overt Act No. 95:    On February 11, 2021, in text messages, after one of defendant TODOROVA's drug delivery drivers was apprehended, defendant SEI asked defendant JOHNSON for the

apprehended driver's full name and date of birth so a "Lawyer can come see him as soon as possible?"

Overt Act No. 96:   On February 13, 2021, in text messages, defendant TODOROVA informed defendant SEI that she paid that same drug delivery driver who was apprehended "$5k for an attorney and another $5k later," and further stated, "We have erased all data on our phones."

Overt Act No. 97:   On February 18, 2021, in text messages, defendant JOHNSON told defendant SEI that the same apprehended drug delivery driver "needs a bit more money for a lawyer."

Overt Act No. 98:   On February 14, 2021, in text messages, defendant TODOROVA asked defendant SEI if he was available to work that night and when defendant SEI responded that he was not available, defendant TODOROVA replied, "That's sucks[.] I would pay double for someone[.] Because I'm in Mexico. I would pay someone a lot of money to work instead of losing clients."

Overt Act No. 99:   On February 15, 2021, in text messages, defendant TODOROVA instructed defendant SEI to obtain cash from the bottom drawer of her nightstand and take it to a drug supplier at an address defendant TODOROVA provided.

Overt Act No. 100:   On February 19, 2021, in text messages, defendant TODOROVA and defendant SEI discussed the other drug delivery driver who was apprehended, and defendant TODOROVA said, "I need help while I'm in Mexico," and defendant SEI replied, "I will take care of everything in the house, supplies etc. but driving feels different now . . . ."

1    <u>Overt Act No. 101:</u>  On February 27, 2021, in text messages,

2    defendant TODOROVA offered defendant SEI $1,000 to deliver drugs that

3    night, and defendant SEI replied, "Ok I am done at 12."

4    <u>Overt Act No. 102:</u>  On March 4, 2021, in text messages,

5    defendant TODOROVA instructed defendant SEI, "Today I arrive at my

6    apartment 535pm. I can drive, but please help me with a bag

7    overstocked and ready to go. I'll pay you to put it together before

8    6pm," and defendant SEI replied, "Yeah sure."

9    <u>Overt Act No. 103:</u>  On March 6, 2021, in text messages,

10   defendant TODOROVA asked defendant SEI if he could work for two hours

11   and stated, "You really let me down this weekend[.] I don't trust

12   anyone else in my apartment but you know I drive/sleep 24 hours so I

13   never have time to make bags. Now I'm losing orders because you

14   didn't do it. I offered to pay you a premium for a few hours of your

15   help. I know you're usually free all Saturday[.] We are a team and

16   you promised to take care of kitchen duties. I feel like you dropped

17   the ball today and now it's stressful for me. Can we drive together

18   for the first two hours? Maybe you can take West LA."

19   <u>Overt Act No. 104:</u>  On March 6, 2021, in text messages,

20   defendant SEI replied to defendant TODOROVA stating, among other

21   things, "You have been back for two days and you are telling me you

22   can't even handle your own business for two days, come on Mimi. You

23   got to step up and just get shit done. I have been telling you I am

24   not driving right now for like 3 weeks now. This is not new news."

25   <u>Overt Act No. 105:</u>  On March 6, 2021, in text messages,

26   defendant TODOROVA demanded that defendant SEI return defendant

27   TODOROVA's keys and threatened, "And if you don't return my keys then

28

I know where you live. Don't try to screw me over just because you have my keys."

Overt Act No. 106:  On March 7, 2021, in text messages, defendant TODOROVA told a new drug delivery driver ("Driver A") that defendant TODOROVA needed "a driver 6pm to 2am" for "5 days a week," informed Driver A that defendant TODOROVA kept a lawyer on retainer and attempted to assuage any concerns Driver A had about working with defendant TODOROVA by confirming to Driver A that defendant TODOROVA would "pay for your lawyer if something happens. He costs $10,000. But I've never had to involve him."

Overt Act No. 107:  On March 7, 2021, in text messages, defendant TODOROVA told Driver A that defendant TODOROVA would bring Driver A "the materials" and "explain the details," and defendant TODOROVA instructed Driver A to "Make sure you have a copy of your car registration, insurance and license stored in your car And nothing is expired."

Overt Act No. 108:  On March 10, 2021, defendant TODOROVA met with Driver A to train Driver A, provided Driver A with various drugs and a cellphone containing a list of contacts for drug customers, and in text messages using coded language, sent Driver A a menu of various drugs, including cocaine for $100 and MDMA for $20.

Overt Act No. 109:  On March 15, 2021, using coded language in text messages, defendant TODOROVA told another drug delivery driver ("Driver B") the pay would be "$37.50/hour," that he could take out of the cash at the end of a shift, and further instructed Driver B, "Please take this job seriously. When you don't show up I lose thousands of dollars if I can't cover your shift. You're not doing me a favor. It's a job like any other job. In the future I'll give you

the phone numbers of my other drivers so you can get your shift covered if you can't show up some day."

Overt Act No. 110:  On March 15, 2021, using coded language in text messages, defendant TODOROVA told Driver B to return to defendant TODOROVA's apartment to obtain more drugs for delivery after Driver B had finished delivering an initial supply of drugs.

Overt Act No. 111:  On March 22, 2021, in text messages, defendant TODOROVA asked defendant SEI, "Hey when do you want to come over again? Need help today or tomorrow anytime," and defendant SEI responded, "Hey[.] I can come tomorrow."

Overt Act No. 112:  On March 23, 2021, in text messages, defendant TODOROVA instructed defendant SEI, "Let me know how much I owe you," and defendant SEI later replied, "Just two hours," and defendant TODOROVA replied, "Ok sending payment."

Overt Act No. 113:  On March 24, 2021, at her residence in Los Angeles, California, defendant TODOROVA possessed with intent to distribute approximately 944 grams of a mixture and substance containing a detectable amount of cocaine, MDMA, a purported oxycodone pill containing fentanyl, various other drugs, drug packaging materials, and digital devices, including a cellphone she loaned to her drivers to facilitate drug deliveries for her.

Overt Act No. 114:  On March 24, 2021, in her vehicle in Los Angeles, California, defendant TODOROVA possessed a cellphone she used to facilitate drug deliveries.

                              COUNT TWO

        [21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

                    [DEFENDANTS TODOROVA and SEI]

     On or about November 15 and 16, 2020, in Los Angeles County, within the Central District of California, defendants MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," aka "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," and MUCKTARR KATHER SEI, aka "Kather Sei," aka "Kat," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug controlled substance, the use of which resulted in the death and serious bodily injury of victim R.M., on or about November 16, 2020.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS TODOROVA, SEI, and MORENO NUNEZ]

On or about November 26, 2020, in Los Angeles County, within the Central District of California, defendants MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," aka "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," MUCKTARR KATHER SEI, aka "Kather Sei," aka "Kat," and CHRISTOPHER Y. MORENO NUNEZ, aka "Christopher Moreno," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug controlled substance, the use of which resulted in the serious bodily injury of victim B.L.H., on or about November 26, 2020.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS TODOROVA and SEI]

On or about December 12, 2020, in Los Angeles County, within the Central District of California, defendants MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," aka "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," and MUCKTARR KATHER SEI, aka "Kather Sei," aka "Kat," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug controlled substance, the use of which resulted in the serious bodily injury of victim S.L., on or about December 12, 2020.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS TODOROVA, SEI, and JOHNSON]

On or about January 8, 2021, in Los Angeles County, within the Central District of California, defendants MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," aka "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," MUCKTARR KATHER SEI, aka "Kather Sei," aka "Kat," and ASHLEY ALICIA NICOLE JOHNSON, aka "Ashley Johnson," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug controlled substance, the use of which resulted in the serious bodily injury of victim H.A., on or about January 9, 2021.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT TODOROVA]

On or about March 24, 2021, in Los Angeles County, within the Central District of California, defendant MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 765 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

[DEFENDANT TODOROVA]

On or about March 24, 2021, in Los Angeles County, within the Central District of California, defendant MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 944 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT TODOROVA]

On or about March 24, 2021, in Los Angeles County, within the Central District of California, defendant MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," knowingly and intentionally possessed with intent to distribute 3,4-Methylenedioxymethamphetamine ("MDMA," "ecstasy," or "molly,"), a Schedule I controlled substance.

COUNT NINE

[18 U.S.C. § 1001(a)(2)]

[DEFENDANT TODOROVA]

On or about December 8, 2021, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the Drug Enforcement Administration ("DEA"), defendant MIRELA TODOROVA, also known as ("aka") "Mirela Dimitrova Todorova," aka "Mimi," aka "$clubmimi," aka "clubmimi," "mimiclub," aka "123mimi@gmail.com," aka "John Mitchell," aka "johnmitchell123@mail.com," knowingly and willfully made materially false representations to the DEA, knowing that these statements and representations were untrue.  Specifically, defendant TODOROVA falsely stated that: (a) she never instructed anyone on how to make drugs or bags (of drugs); (b) she never explained to anyone what to do for drug deliveries; and (c) she had only met defendant SEI twice. In fact, as defendant TODOROVA then knew, beginning on a date unknown and continuing through on or about March 24, 2021, defendant TODOROVA instructed defendant SEI and other delivery drivers how to make drugs and bags of drugs and further explained how to make drug deliveries. Defendant TODOROVA met defendant SEI numerous times between June 2020 and March 2021 so he could, among other things, deliver defendant TODOROVA's controlled substances to her customers, assist defendant TODOROVA's other drug delivery drivers, and assist in managing defendant TODOROVA's controlled substances distribution while defendant TODOROVA was abroad.

1
2

                        FORFEITURE ALLEGATION

                         [21 U.S.C. § 853]

3      1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 21,

6  United States Code, Section 853 and Title 28, United States Code,

7  Section 2461(c), in the event of any defendant's conviction of the

8  offenses set forth in Counts One through Eight of this Second

9  Superseding Indictment.

10     2.    Any defendant so convicted shall forfeit to the United

11 States of America the following:

12         (a)  All right, title and interest in any and all property,

13 real or personal, constituting or derived from, any proceeds which

14 the defendant obtained, directly or indirectly, from any such

15 offense;

16         (b)  All right, title and interest in any and all property,

17 real or personal, used, or intended to be used, in any manner or

18 part, to commit, or to facilitate the commission of any such offense;

19 and

20         (c)  To the extent such property is not available for

21 forfeiture, a sum of money equal to the total value of the property

22 described in subparagraphs (a) and (b).

23     3.    Pursuant to Title 21, United States Code, Section 853(p),

24 any defendant so convicted shall forfeit substitute property if, by

25 any act or omission of said defendant, the property described in the

26 preceding paragraph, or any portion thereof: (a) cannot be located

27 upon the exercise of due diligence; (b) has been transferred, sold

28 to, or deposited with a third party; (c) has been placed beyond the

1  jurisdiction of the court; (d) has been substantially diminished in

2  value; or (e) has been commingled with other property that cannot be

3  divided without difficulty.

4

                                          A TRUE BILL

5

6
                                          _____/s/_____
7                                         Foreperson

8

9  E. MARTIN ESTRADA
   United States Attorney
10

11

12  MACK E. JENKINS
    Assistant United States Attorney
13  Chief, Criminal Division

14  J. MARK CHILDS
    Assistant United States Attorney
15  Chief, International Narcotics,
    Money Laundering, & Racketeering
16  Section

17  CHRISTOPHER C. KENDALL
    Assistant United States Attorney
18  Deputy Chief, International
    Narcotics, Money Laundering, &
19  Racketeering Section

20  PATRICK CASTAÑEDA
    Assistant United States Attorney
21  International Narcotics, Money
    Laundering, & Racketeering Section
22

23

24

25

26

27

28